**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 11-2180**

———————

UNITED STATES OF AMERICA ex rel. MELAN DAVIS; UNITED STATES
OF AMERICA ex rel. BRAD DAVIS,

> Plaintiffs - Appellants,

> v.

U.S. TRAINING CENTER INCORPORATED, f/k/a Blackwater Lodge
and Training Center, Incorporated,

> Defendant – Appellee,

> and

BLACKWATER SECURITY CONSULTING, LLC; BLACKWATER ARMOR AND
TARGETS, LLC; BLACKWATER LOGISTICS, LLC; BLACKWATER CANINE;
RAVEN DEVELOPMENT GROUP LLC; GREYSTONE LIMITED; THE PRINCE
GROUP, LLC; XE SERVICES LLC, f/k/a EP Investments, LLC,
d/b/a Blackwater Worldwide; ERIK PRINCE; BLACKWATER
AIRSHIPS, LLC,

> Defendants.

———————

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.  T. S. Ellis, III, Senior
District Judge.  (1:08-cv-01244-TSE-TRJ)

———————

Argued: October 25, 2012          Decided: December 6, 2012

———————

Before MOTZ and KEENAN, Circuit Judges, and James K. BREDAR,
United States District Judge for the District of Maryland,
sitting by designation.

———————

Affirmed by unpublished opinion. Judge Keenan wrote the opinion, in which Judge Motz and Judge Bredar joined.

————————

**ARGUED:** Susan L. Burke, BURKE PLLC, Washington, D.C., for Appellants. David William O'Brien, Brian T. McLaughlin, CROWELL & MORING, LLP, Washington, D.C., for Appellee. **ON BRIEF:** Susan M. Sajadi, BURKE PLLC, Washington, D.C., for Appellants. Richard L. Beizer, CROWELL & MORING, LLP, Washington, D.C., for Appellee.

————————

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

Relators Brad Davis and Melan Davis (Relators) brought this qui tam lawsuit under the False Claims Act, 31 U.S.C. §§ 3729-3733, against U.S. Training Center, Inc. (USTC), formerly known as Blackwater Worldwide Lodge and Training Center, Inc. (Blackwater),[1] and several other defendants (collectively, Defendants).[2] The Relators, a married couple formerly employed by USTC, alleged that Defendants overbilled the federal government and committed other acts of fraud in connection with two contracts that USTC entered into with the Department of Homeland Security (DHS), and the Department of State (the State Department), respectively.

The district court granted summary judgment in favor of USTC with respect to the contract with DHS, which required USTC to provide security services in support of DHS' efforts in 2005 to assist affected areas in the aftermath of Hurricane Katrina

_____

[1] We refer to the principal defendant as USTC, although we note that the company was known as Blackwater during the events that gave rise to the Relators' complaint.

[2] The other parties named as defendants in the Relators' second amended complaint were Erik Prince, the founder and CEO of Blackwater, and several corporate entities affiliated with Blackwater, including Blackwater Security Consulting, LLC, Greystone Limited, The Prince Group LLC, and Xe Services LLC. These parties were dismissed from the lawsuit by the district court, such that the only defendant relevant to this appeal is USTC.

(the Katrina contract). Relators appeal from the court's grant of summary judgment with respect to the Katrina contract.

The district court allowed two of Relators' claims concerning the State Department contract, under which USTC provided security services in Iraq and Afghanistan in connection with the United States' military presence in those areas (the Protective Services contract), to proceed to a jury trial. The jury rendered a verdict in favor of USTC on the claims presented. The Relators sought a new trial on the basis that one of USTC's trial witnesses allegedly committed perjury. The district court denied the motion.

On appeal, Relators argue that they are entitled to a new trial because the district court made certain erroneous evidentiary rulings, prohibiting Relators from introducing evidence that would have bolstered their claims and would have undermined USTC's defenses. Relators also appeal from the district court's denial of their motion for a new trial.

Upon our review, we hold that the district court: (1) did not err in granting summary judgment in favor of USTC on the claims relating to the Katrina contract; (2) did not abuse its discretion in excluding certain categories of evidence that Relators sought to introduce at trial; and (3) did not abuse its discretion in denying Relators' motion for a new trial because

Relators failed to establish that USTC's witness committed perjury. Accordingly, we affirm the district court's judgments.

I.

A.

In 2005, the Federal Protective Service division of DHS selected USTC to provide armed guard services in Louisiana in support of DHS' Hurricane Katrina recovery efforts. Under the parties' written agreement, USTC was required to provide fourteen armed guards and four vehicles to protect a temporary morgue in Baton Rouge, Louisiana.[3] The Katrina contract specified that the armed security guards provided by USTC were required to meet certain minimum qualifications, including United States citizenship, a high school diploma, proficiency in the English language, current or prior security experience, "[s]ubstance screening," firearms training, firearms qualifications, and valid firearms-related licenses. The contract further specified that the security guards must undergo a "NCIC check," which is a criminal background check conducted

---

[3] The Katrina contract also provided that DHS could direct USTC to perform additional duties, potentially increasing the number of personnel required. The contract authorized a maximum of 4494 "man days," and described a "man day" as consisting of a "minimum of 12 productive hours of security service or directly related work in support of the ongoing security operation."

in conjunction with the Federal Bureau of Investigation's National Crime Information Center (NCIC).[4] However, the contract also provided that DHS, rather than USTC, was responsible for obtaining these background checks.

Also in 2005, the State Department selected USTC to provide security services in Iraq and Afghanistan under a "Worldwide Personal Protective Services" agreement. Under the Protective Services contract, security personnel provided by USTC would assist the Bureau of Diplomatic Security of the State Department (the Bureau) in fulfilling the Bureau's security goals.[5]

The Protective Services contract provided that USTC would be compensated for its personnel on a fixed "per-person-per-day" basis, referred to as the "boots on the ground" billing rule. As required by the contract, USTC used "muster sheets," which are computer spreadsheets that require manual input, to "track[]

---

[4] See Federal Bureau of Investigation, National Crime Information Center, http://www.fbi.gov/about-us/cjis/ncic.

[5] The "Statement of Work" in the Protective Services contract identified the following "specific goals" of the Bureau: "Prevent[ing] loss of life, injury to personnel, and damage/destruction of facilities or equipment, worldwide as specified by individual Task Orders issued under this contract. Ensur[ing] security and safety of personnel and facilities in static (fixed) locations and/or in mobile (in transit) operations. Expedit[ing] the movement of personnel in the accomplishment of their missions. Secur[ing] the environment to enable personnel to conduct their business and complete their missions. Protect[ing] personnel and the organizations they represent from harm or embarrassment."

the daily duty status for each authorized position at a duty
station." The State Department used these "muster sheets" for
purposes of validating USTC's monthly labor invoices.
Essentially, a "muster sheet" functioned as a daily time sheet,
and recorded whether and how many of USTC's personnel had "boots
on the ground" each day. Additionally, USTC was permitted to
receive reimbursement for certain expenses, such as travel
expenditures, by submitting to the State Department invoices
supported by appropriate documentation such as hotel bills and
flight itineraries.

B.

Relators both were formerly employed by USTC. Brad Davis
(Brad), a former member of the United States Marine Corps, was
hired by USTC in April 2005. Upon being hired, he was sent to
work in Iraq in connection with the Protective Services
contract. Brad worked in Iraq on USTC's behalf for about three
months in 2005, and later returned to Iraq in 2006 to conduct
additional work for USTC. During the interim period, he was
sent by USTC to provide security services in Louisiana under the
Katrina contract. He worked in Louisiana for one month, first
as an assistant area manager, and later was promoted to the
position of area manager. During his employment in Iraq and in
Louisiana for USTC, Brad allegedly observed fraud and other acts

that, in his view, were in violation of USTC's contractual responsibilities.

Melan Hebert Davis (Melan) became engaged to Brad shortly before he was hired by USTC and sent to Iraq. When Brad was working in Louisiana under the Katrina contract, he learned that USTC needed personnel to perform record-keeping and billing responsibilities. Melan applied and was hired to work for USTC in that capacity. During her employment in Louisiana, she allegedly observed numerous fraudulent acts, such as overbilling and submission of false invoices.

Melan alleged that she was discharged from her position when she raised these concerns to her supervisors. She later was rehired by USTC to perform work under the Protective Services contract, serving as a "cost reimbursable" clerk on USTC's finance team. In this position, she allegedly discovered additional fraudulent billing and other acts of fraud committed by Defendants. Melan eventually was discharged from USTC during a health-related leave of absence.

C.

On behalf of the United States pursuant to the qui tam provision of the False Claims Act, Relators filed a complaint against Defendants in December 2008 in the United States District Court for the Eastern District of Virginia. Relators twice amended their complaint, once in April 2010, and again in

8

July 2010 with the filing of the Second Amended Complaint (the Complaint), which is the set of allegations relevant to this appeal.

As set forth in the Complaint and the accompanying disclosure statements, Relators alleged that Defendants engaged in widespread fraud against the government and otherwise failed to comply with the duties required by the Katrina contract and the Protective Services contract. With respect to the Katrina contract, Relators alleged that Defendants provided "worthless services" to DHS under the contract because Defendants failed to manage personnel, failed to monitor the distribution of weapons, and failed to ensure that weapons were not given to felons or guards otherwise disqualified[6] from carrying firearms. After discovery, the district court granted summary judgment in favor of Defendants on all claims relating to the Katrina contract.[7] Relators appeal from the district court's summary judgment award.

---

[6] The Complaint referred to the Lautenberg Act, 18 U.S.C. § 922(g)(9), otherwise known as the Lautenberg Amendment, which prohibits access to firearms by persons convicted of misdemeanor crimes of domestic violence.

[7] Relators also alleged that Defendants submitted falsified time cards for employees performing services required by the contract, and used false accounting records to justify the "daily rate" paid for employees. Relators do not challenge on appeal the district court's dismissal of these additional allegations.

With respect to the Protective Services contract, Relators alleged that Defendants submitted false "muster sheets," resulting in USTC receiving compensation for hours in which USTC employees were not performing contractual services. The Relators also alleged that Defendants submitted false travel records.[8] The case proceeded to trial on the false "muster sheets" claims and the false travel records claims asserted against USTC.[9] As described in greater detail later in this opinion, the district court made certain evidentiary rulings before and during trial prohibiting the admission of several categories of evidence offered by Relators.

The jury found in USTC's favor on both claims presented at trial. After the trial concluded, Relators filed a motion seeking a new trial pursuant to Rule 59(a)(1) of the Federal Rules of Civil Procedure, arguing that Danielle Esposito, USTC's

_____

[8] Relators alleged in the Complaint two additional claims relating to the Protective Services contract. First, Relators asserted that Defendants provided "worthless services" to the State Department under the contract because USTC employees used steroids, "smuggled" weapons, and engaged in the unjustified use of excessive force. The district court dismissed this claim before discovery. Second, Relators alleged that Defendants falsely billed for expenses incurred by affiliates and submitted false invoices. The district court granted summary judgment in favor of Defendants on this claim after discovery. Relators do not challenge on appeal the district court's dismissal of those two claims.

[9] The district court granted summary judgment in favor of all Defendants except USTC on these claims.

former Chief Operating Officer, allegedly committed perjury. During her trial testimony, Esposito stated that she provided to government auditors a copy of a report prepared by an accounting firm, which had criticized USTC's accounting practices and controls. After the trial, Relators obtained a sworn declaration prepared by the government representative to whom Esposito purportedly gave the accounting firm's report. In that declaration, the government representative stated that Esposito did not provide him the report. The district court reviewed the declaration and concluded, among other things, that Relators failed to prove that Esposito perjured herself. The court thus denied the Relators' Rule 59 motion.

## II.

As described above, the Relators' appeal presents three issues for our review. First, we address whether the district court erred in granting summary judgment in USTC's favor on the "worthless services" claim relating to the Katrina contract. Second, we address whether the district court abused its discretion in excluding from evidence certain categories of documents and testimony offered by Relators in support of their claims relating to the Protective Services contract. Third and finally, we address whether the district court abused its discretion in denying Relators' motion for a new trial on the

basis of Esposito's allegedly perjured testimony.  We address each of these issues in turn.

A.

We review de novo the district court's award of summary judgment in favor of USTC on the allegations relating to the Katrina contract.  See S.C. Green Party v. S.C. State Election Comm'n, 612 F.3d 752, 755 (4th Cir. 2010).  We view the facts, and all reasonable inferences that may be drawn from those facts, in the light most favorable to Relators, the non-moving parties.  See Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011).  Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 295 (4th Cir. 2010).

The False Claims Act (the Act) provides that a complaint may be brought against anyone who "knowingly presents" to the government "a false or fraudulent claim for payment or approval."[10]  31 U.S.C. § 3729(a)(1)(A).  The elements of a claim under the Act, which are predicated on fraudulent conduct,

---

[10] The Act similarly allows suit against anyone who "knowingly makes . . . a false record or statement material to a false or fraudulent claim."  31 U.S.C. § 3729(a)(1)(B).

required that Relators establish: (1) that USTC engaged in a fraudulent course of conduct; (2) that such conduct was carried out knowingly; (3) that the conduct was material; and (4) that the conduct caused the government to pay money in return. United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co., 612 F.3d 724, 729 (4th Cir. 2010).

The essence of Relators' claim relating to the Katrina contract was that USTC's performance under the contract was materially deficient in three respects described below, and that had the government been aware of these deficiencies, the government justifiably would have refused to compensate USTC for the services it provided. Relators alleged in the Complaint that "[t]he contract required that [USTC] management manage personnel, monitor the distribution of weapons[,] and ensure that the company did not give weapons to felons or persons disqualified from using weapons by the Lautenberg Act, which prohibits those involved in domestic abuse from obtaining weapons." In light of this allegation that comprised the core of Relators' "worthless services" claim,[11] we analyze the Katrina

---

[11] As described by the Second Circuit, "[i]n a worthless services claim, the performance of the service is so deficient that for all practical purposes it is the equivalent of no performance at all." Mikes v. Straus, 274 F.3d 687, 703 (2d Cir. 2001).

contract to determine whether USTC actually was required to carry out the obligations identified by Relators.

Our review of the Katrina contract requires us to apply settled principles of contract interpretation. "When the United States enters into contract relations, [the government's] rights and duties therein are governed generally by the law applicable to contracts between private individuals." Lynch v. United States, 292 U.S. 571, 578 (1934); see also In re Peanut Crop Ins. Litig., 524 F.3d 458, 470 (4th Cir. 2008); United States v. Bankers Ins. Co., 245 F.3d 315, 321 (4th Cir. 2001). Except when Congress has explicitly adopted a different standard, we apply "the principles of general contract law, which become federal common law" in interpreting government contracts. In re Peanut Crop Ins. Litig., 524 F.3d at 470 (quoting Long Island Sav. Bank, FSB v. United States, 503 F.3d 1234, 1245 (Fed. Cir. 2007)).

As a primary principle of contract interpretation, we "begin[] with the language of the written agreement." NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004). In construing the language of a contract, "the plain and unambiguous meaning of [the] written agreement controls." Craft Mach. Works, Inc. v. United States, 926 F.2d 1110, 1113 (Fed. Cir. 1991).

Applying these principles, we agree with the district court's conclusion that the Katrina contract did not require USTC to manage personnel, to monitor the distribution of weapons, or to ensure that weapons were not given to felons or persons disqualified from using them by the Lautenberg Act. We observe that the Katrina contract, by its plain terms, did not assign USTC the responsibility for managing personnel or monitoring the distribution of weapons. We also conclude that the contract did not require USTC to ensure that felons or persons ineligible to possess weapons by virtue of the Lautenberg Act did not receive weapons. As the district court correctly explained, ensuring that such people do not receive firearms requires a background check to determine their criminal history. However, under the Katrina contract, DHS, rather than USTC, expressly was given the responsibility of performing criminal background checks for the security guards. Accordingly, we conclude that the underlying basis for Relators' remaining claim under the Katrina contract, that USTC rendered "worthless services" in failing to fulfill its purported contractual responsibilities, is illusory.

Our conclusions are not altered by Relators' additional argument, in which Relators assert that summary judgment was unwarranted because there remained a factual dispute whether USTC falsely certified to the government that USTC was providing

15

contractually-conforming services.  The district court held that
Relators could not avoid summary judgment on this basis, because
Relators did not allege such a "false certification" claim in
the Complaint.  We agree with the district court's conclusion.
See Owens, 612 F.3d at 731 (plaintiff may not raise new claims
after discovery has begun without first amending the complaint);
Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 617 (4th
Cir. 2009) (same).  Accordingly, we affirm the district court's
award of summary judgment in favor of USTC on the Katrina
contract claim.

B.

We next address Relators' argument that they are entitled
to a new trial because the district court erred in excluding
certain categories of evidence that Relators sought to introduce
during the trial.  In reviewing the district court's evidentiary
rulings, we observe that the district court has substantial
discretion in making rulings on the admissibility of evidence.
See United States v. Hedgepeth, 418 F.3d 411, 418-19 (4th Cir.
2005).  We have stated that "[j]udgments of evidentiary
relevance and prejudice are fundamentally a matter of trial
management, for '[t]rial judges are much closer to the pulse of
a trial than we can ever be and broad discretion is necessarily
accorded them.'"  United States v. Benkahla, 530 F.3d 300, 309

(4th Cir. 2008) (quoting United States v. Simpson, 910 F.2d 154, 157 (4th Cir. 1990)).

For these reasons, we afford the district court "substantial deference," and we will not overturn any of the court's evidentiary rulings absent an abuse of discretion. United States v. Medford, 661 F.3d 746, 751 (4th Cir. 2011). A district court abuses its discretion when the court acts in an arbitrary manner, when the court fails to consider judicially-recognized factors limiting its discretion, or when the court relies on erroneous factual or legal premises.[12] United States v. Henry, 673 F.3d 285, 291 (4th Cir. 2012).

1.

We first consider the district court's exclusion of certain portions of an electronic mail (email) attachment, which Relators alleged was a genuine itinerary from USTC's travel agency containing a handwritten note from one of USTC's employees. Relators sought to introduce this evidence as part of their claim that USTC was overbilling the State Department for travel reimbursements. The district court granted USTC's

---

[12] Even if we concluded that the district court's evidentiary rulings constitute an abuse of the court's discretion, any such errors would not entitle a party to a new trial unless those errors affected the party's substantial rights. Schultz v. Capital Int'l Sec., Inc., 466 F.3d 298, 310 (4th Cir. 2006) (citing Fed. R. Evid. 103(a)).

17

motion to exclude this evidence under the rule prohibiting hearsay.

On appeal, Relators argue that the email attachment should have been admitted because it was not being offered for the truth of the matter asserted, cf. Fed. R. Evid. 801(c), and because the attachment was admissible under the hearsay exemption for party admissions, see Fed. R. Evid. 801(d)(2)(D). Upon our review of the record, we conclude that Relators did not sufficiently raise these arguments in the district court and, accordingly, have waived them.[13] See Jimenez v. DaimlerChrysler Corp., 269 F.3d 439, 453 (4th Cir. 2001) (evidence is properly excluded when alternative theory of admissibility is not timely offered); see also Wheatley v. Wicomico Cnty., 390 F.3d 328, 334 (4th Cir. 2004) (issues raised for the first time on appeal are generally not considered absent exceptional circumstances). Because Relators do not otherwise challenge the district court's bases for excluding portions of the email attachment, we conclude that this evidentiary ruling was not an abuse of the court's discretion.

---

[13] During trial, Relators argued that the attachment was not hearsay because they offered it to show that Melan's supervisor directed her to fraudulently alter travel invoices. Relators do not raise this theory on appeal, and instead argue that the attachment is not hearsay because Relators sought its admission to prove "notice" to USTC that the travel agency had the ability to generate accurate travel documentation retroactively.

2.

We next address the district court's exclusion of certain testimony and exhibits relating to the State Department's 2007 review of USTC's operations in Iraq. Relators sought to introduce this evidence, which they claim suggested that the reviewers found that USTC was altering billing records and that a USTC employee issued a "death threat" to one of the reviewers, to show USTC's intent to defraud and "hide its bad acts through intimidation." The district court excluded this evidence because the court found that the evidence lacked significant probative value and was highly prejudicial, and thus was inadmissible under Federal Rule of Evidence 403.[14]

Upon our review of the record, we conclude that the district court did not abuse its discretion in making these determinations. In our view, the evidence concerning the

---

[14] Rule 403 of the Federal Rules of Evidence provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The district court also excluded several exhibits that are part of this category of evidence on authentication grounds, as well as certain testimony on hearsay grounds. Relators do not argue on appeal that the district court erred in reaching those conclusions.

alleged "death threat" was inherently sensational, and was only marginally, if at all, relevant to Relators' claims.[15]

We further agree with the district court that the evidence concerning the alteration of billing records lacked probative value and thus was properly excluded from admission, because there is no evidence that the records alleged to have been altered were related to USTC's billing or submission of claims to the government at issue in this case. Relators conceded at trial that the reviewer who purportedly observed USTC employees making alterations did not know whether the alterations were improper or whether they pertained to billing records to be submitted to the State Department. Accordingly, we conclude that the district court did not abuse its discretion in excluding from evidence testimony and exhibits relating to the State Department's 2007 review.

3.

The next category of excluded evidence that we consider includes testimony and email records allegedly showing that USTC paid "bribes" to officials in Afghanistan to expedite visa

---

[15] In making its ruling, the district court observed, accurately in our view, that there is no evidence suggesting that the "death threat" was related to the reviewers' search for billing discrepancies or other falsehoods. As explained by the district court, the confrontation "could have been clash of personalities. It could have been anger about something that happened somewhere else."

renewals for USTC personnel, and that USTC submitted bills to the State Department to be reimbursed for such bribes. Relators sought to introduce this evidence to refute USTC's defense that any overbillings occurred because of "innocent mistakes," and also to bolster Melan's credibility. The district court excluded this evidence under Rule 404(b), which prohibits the use of evidence of crimes, wrongs or other acts as evidence of character or to show that a party acted in conformance with that character. The court also cited Rule 403 in support of its ruling.

Evidence concerning "prior bad acts" is admissible under Rule 404(b) only if the evidence is: (1) relevant to an issue other than character, (2) necessary, and (3) reliable. United States v. Hernandez, 975 F.2d 1035, 1039 (4th Cir. 1992) (citing United States v. Rawle, 845 F.2d 1244, 1247 (4th Cir. 1988)). However, even if the evidence satisfies this test, the evidence still may be excluded under Rule 403. Id. The district court addressed these factors, finding that the bribery evidence was not necessary because it was relevant only to the character of USTC's employees, implying that the employees were "bad people willing to pay bribes," and that the evidence was not reliable

because it was "sharply disputed."[16]    Upon our review of the record and the parties' arguments, we agree with the district court's reasoning, and we conclude that the court acted well within its discretion in excluding under Rule 404(b) the evidence concerning alleged bribes to Afghani officials.[17]

Our conclusion is not altered by Relators' additional argument that the evidence was admissible because the bribes purportedly were part of the "false billings" at issue in this case. The district court ruled on summary judgment that the Complaint "does not allege that [D]efendants billed the Department of State for bribes paid to Afghani officials." Relators did not appeal that aspect of the district court's judgment, and thus have waived argument concerning any potential claims alleging bribes to foreign officials. See Wheatley, 390 F.3d at 334; Jimenez, 269 F.3d at 453.

4.

We next address Relators' argument that the district court erred in excluding a draft audit report prepared by David

---

[16] The district court further concluded that whether the payments were actually bribes was contested and that admission of this evidence could lead to a "side litigation."

[17] In light of our holding, we need not reach the issue whether this category of evidence also would have been properly excluded under Rule 403.

Cotton, Chairman of the firm Cotton & Company,[18] and testimony concerning the report. The district court allowed Mr. Cotton to testify concerning any matters within his personal knowledge during his work as an auditor that were relevant to Relators' claims. However, because Relators did not designate Mr. Cotton as an expert witness or provide an expert witness disclosure as mandated by Rule 26 of the Federal Rules of Civil Procedure, the court prohibited Mr. Cotton from offering any expert opinions. Accordingly, Mr. Cotton was not permitted to offer any testimony concerning discrepancies in the bills USTC submitted to the government, or to provide an analysis of USTC's bills or billing procedures.

Relators argue that the district court abused its discretion in characterizing the prohibited subjects as matters of expert testimony, rather than as lay testimony. We disagree with Relators' argument. Based on our review of the draft audit report, we easily conclude that the report, and Mr. Cotton's potential testimony concerning the report's conclusions, are matters of expert testimony. Relators' unsupported assertion that lay testimony is appropriate on complicated matters such as

---

[18] Cotton & Company was retained by the government to conduct an audit of USTC's performance under the Protective Services contract.

the interpretation of billing practices does not make it so.[19]
See United States v. Perkins, 470 F.3d 150, 155 (4th Cir. 2006)
("Rule 701 forbids the admission of expert testimony dressed in
lay witness clothing."). Rather, opinions offered on matters
relating to "scientific, technical, or other specialized
knowledge" are considered expert testimony under the Federal
Rules of Evidence, see Fed. R. Evid. 701, and are subject to the
limitations contained in Fed. R. Evid. 702 and the disclosure
requirements contained in Fed. R. Civ. P. 26(a)(2). See United
States v. Johnson, 617 F.3d 286, 292 (4th Cir. 2010) (opinions
not based on witnesses' own perception but rather on their
experience and training are expert opinions rather than lay
opinions); United States v. White, 492 F.3d 380, 403-04 (6th
Cir. 2007) (concluding that Medicare auditors' testimony
concerning the Medicare reimbursement process and their
understanding of certain terms constituted expert testimony
subject to Fed. R. Evid. 702). For these reasons, we conclude

---

[19] For instance, the report reflected Cotton & Company's conclusions in three categories: "1) Internal Control Deficiencies; 2) Questioned Costs; and 3) Compliance Issues." The report further summarized Cotton & Company's "audit objectives," such as the performance of a "risk assessment," the evaluation of USTC's "internal controls," and reviewing the Protective Service contract's "current cost model." Relators' argument that the excluded testimony concerning the report's conclusions is fact testimony rather than expert opinion testimony strains credulity.

that the district court did not abuse its discretion in prohibiting the introduction of the Cotton & Company report and testimony concerning that report, because Relators did not designate these matters as expert opinion evidence.

5.

We also conclude that the district court did not abuse its discretion in excluding evidence relating to the alleged falsification of a government form by Gary Jackson, USTC's former president.[20] The document at issue was a Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) form relating to a separate matter for which Jackson had been indicted by the government. The ATF form that Jackson allegedly falsified was not related to the Protective Services contract, and therefore was not directly at issue in this case.

Relators sought to ask Jackson about the allegedly falsified ATF form as part of Relators' inquiry concerning "Jackson's willingness to sign his name to government forms swearing to the truth of statements and claims that are in fact false." Relators intended by such questioning to "provoke" Jackson to assert his Fifth Amendment rights, thereby allowing Relators to obtain an instruction advising the jurors that they

---

[20] According to Relators, Jackson certified several of the USTC invoices billed to the State Department that were at issue in this case.

were permitted to draw an adverse inference from Jackson's invocation of his constitutional rights.

The district court granted USTC's motion in limine regarding this line of questioning, concluding that it was inadmissible under Federal Rule of Evidence 404(a) as character evidence offered for the purpose of proving action in conformity with that character.[21] We agree with the district court's conclusion, because the ATF form was not a form identified in the complaint as having been falsified, and, as noted above, the form was unrelated to the Protective Services contract. Therefore, testimony regarding this form would have related only to Jackson's character and his purported propensity to falsify government forms,[22] bases of inquiry expressly prohibited by Rule 404(a). Accordingly, we hold that the district court did not

---

[21] Rule 404(a) of the Federal Rules of Evidence provides that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." The district court also held that evidence concerning the ATF form was subject to exclusion under Rule 403.

[22] We find no merit in Relators' conclusory argument that evidence concerning the ATF form was admissible to prove "intent and motive." Even assuming that there was a minimal connection between the allegedly falsified form and Jackson's motive and intent in this case, the substantial deference we afford to the district court's evidentiary rulings would require us to reject Relators' argument.

abuse its discretion in barring Relators from asking Jackson any questions concerning the allegedly falsified ATF form.

6.

We next address the final category of evidence that Relators argue was wrongly excluded from admission, namely, certain testimony from Relators' expert witness, John Willis, a forensic accountant. The district court limited Willis' testimony only to the extent that he was not permitted to state that he found "fraud indicators" upon reviewing USTC's documents. The court allowed Willis to testify concerning certain travel and "muster sheet" discrepancies, so long as Willis did not state that such discrepancies were an "indicator of fraud." The court prohibited this narrow aspect of Willis' testimony because, in the court's view, "[f]raud requires proof of things that no accountant has," and thus, testimony concerning "fraud indicators" was beyond Willis' expertise.

Although this ruling presents a closer question than the other evidentiary challenges raised by Relators, we hold that the district court did not abuse the broad and substantial discretion that the court is afforded in ruling on evidentiary matters.[23]    See Benkahla, 530 F.3d at 309.    The testimony

_____

[23] We also observe that Relators did not cite any cases to the district court supporting their position that an accounting expert may label certain findings "fraud indicators."    On (Continued)

27

excluded by the district court was only one discrete aspect of Willis' conclusions, and Willis expressly was permitted to testify about any and all travel and "muster sheet" discrepancies that he observed during his review of the documents. Accordingly, for these reasons, we hold that the district court did not abuse its discretion in making the above evidentiary rulings challenged in this appeal.

C.

Finally, we address Relators' argument that the district court erred in failing to grant a new trial or to order an evidentiary hearing on the Rule 59 motion involving Relators' contention that Esposito, the former Chief Operating Officer of USTC, committed perjury. A new trial is warranted based on a witness' perjury when: (1) the trial court is "reasonably well satisfied" that a material witness gave false testimony; (2) in the absence of the false testimony, the jury may have reached a

---

appeal, however, Relators cite United States v. Bollin, 264 F.3d 391 (4th Cir. 2001), in support of their argument. We stated in Bollin, in the course of holding that the evidence supported the defendant's conviction, that "[t]he Government's expert testified that there were numerous indicators of fraud" in the documents he reviewed. Id. at 407. Our decision in Bollin did not, however, involve a challenge to the admissibility of testimony concerning "fraud indicators." Accordingly, Relators' reliance on Bollin for the proposition that "[t]his Circuit routinely allows qualified experts to testify about fraud indicators" is misleading and unavailing.

different conclusion; and (3) the party requesting the new trial was "taken by surprise" when the false testimony was given, and was unable to address it or was not aware of its falsity until after the trial. United States v. Wallace, 528 F.2d 863, 866 (4th Cir. 1976); see also Davis v. Jellico Cmty. Hosp., Inc., 912 F.2d 129, 134 (6th Cir. 1990) (applying this test in civil context). In reviewing the district court's denial of Relators' motion, we observe that "[t]he decision to grant or deny a new trial is within the sound discretion of the district court, and we respect that determination absent an abuse of discretion." Cine v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998) (citing Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc., 99 F.3d 587, 594 (4th Cir. 1996)).

As noted previously, Esposito testified at trial that she provided to government auditors a copy of an independent audit report (the report) that was critical of USTC's accounting procedures and controls.[24] Esposito was asked, "[D]id you provide a copy of [the report] to the [government's] audit team?" Esposito replied, "Yes, I did." Relators' counsel asked Esposito, "[W]ho did you provide it to?" Esposito answered,

_____

[24] The report, prepared by the accounting firm BDO Seidman, concluded that USTC managerial practices in Iraq "resulted in a fair amount of unnecessary or inappropriate expenditures, as well as waste," and "created an environment lacking sufficient accountability and asset security."

"[Robert] Farrell or one of his three reps, but I am pretty sure it was Mr. Farrell."[25]

Robert Farrell, a Certified Fraud Examiner hired by Cotton & Company, the government's auditing firm in this matter, executed a sworn declaration after the trial that was appended to Relators' Rule 59 motion. In his declaration, responding to Esposito's claim at trial that she provided him or his employees a copy of the report, Farrell stated, "Ms. Esposito's testimony is incorrect. Ms. Esposito never gave me or any of the other Cotton & Company representatives a copy of [the report]."

Relators argued in the district court that Farrell's declaration established that Esposito committed perjury. Relators further asserted that they were entitled to a new trial because if the jury had been made aware of the purported false testimony, USTC's defenses of "government knowledge" and "lack of intent to defraud" would have been undermined.

The district court denied Relators' Rule 59 motion without a hearing. Among other reasons, the court concluded that Relators failed to satisfy their evidentiary burden because the evidence offered by Relators, namely Farrell's declaration, did

---

[25] Esposito further testified that there was no document that memorialized her transmission of the report because she "hand delivered it to [the government's audit team]." Esposito also stated during her testimony that she could not remember the exact date on which she provided the report.

not establish that Esposito's testimony was false.[26]  See
Wallace, 528 F.2d at 866 (movant seeking new trial must
establish to the district court's satisfaction that "the
testimony given by a material witness is false") (citation
omitted).  According to the district court, "[a]t most, the
record discloses that the witness alleged to have committed
perjury has a different recollection from the witness now
adduced by [Relators], and there simply is no way to determine
which witness has a better memory or remembers the events in
question more accurately."

We agree with the district court's conclusion that
Farrell's declaration does not establish that Esposito's
testimony was false, but rather, at most, suggests that her
recollection of the events was different than Farrell's.  A mere
discrepancy in the testimony of two witnesses does not establish
perjury.  See United States v. Anderson, 509 F.2d 312, 327 (D.C.
Cir. 1974) (holding that the fact that two witnesses gave

_____

[26] The district court provided two additional bases for its
denial of the Rule 59 motion.  First, the court held that
Relators' post-trial assertion of perjury by Esposito was
untimely, because Relators had sufficient time to present
Farrell as a witness to the jury.  Second, the court held that
even if Esposito's testimony was false, the jury would not have
reached a different verdict because the contested testimony was
"incidental, rather than central," to the issues before the
jury.  In light of our analysis of the court's primary basis for
denying Relators' motion, we need not address these additional
reasons for concluding that a new trial was not warranted.

different testimony "is obviously insufficient to establish that either is a perjurer"). Because this discrepancy is the basis for Relators' accusation that Esposito committed perjury, we hold that the district court did not abuse its discretion in denying Relators' Rule 59 motion for a new trial.

Likewise, we find no merit in Relators' argument that they were entitled to an evidentiary hearing to develop further their contention that Esposito perjured herself. As we noted in United States v. Smith, 62 F.3d 641, 651 (4th Cir. 1995), "[j]ust as the district court has broad discretion in resolving a new trial motion, so too does it enjoy discretion whether to hold an evidentiary hearing on the motion." (Citation omitted). This degree of deference is appropriate because "the acumen gained by a trial judge over the course of the proceedings" makes the court "well qualified" to rule on a motion for a new trial without an evidentiary hearing. United States v. Hamilton, 559 F.2d 1370, 1373–74 (5th Cir. 1977). Upon our review of the record and the parties' arguments, we have no difficulty in concluding that the district court did not abuse its discretion in resolving Relators' motion on the pleadings rather than ordering a post-trial evidentiary hearing.

III.

In sum, we hold that the district court correctly concluded that USTC was entitled to summary judgment on claims arising under the Katrina contract.  We further hold that the district court did not abuse its discretion in its evidentiary rulings or in concluding that Relators were not entitled to a new trial on claims arising under the Protective Services contract. Accordingly, we affirm the district court's judgments.

<u>AFFIRMED</u>